*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 06a0423p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

      *Plaintiff-Appellant,*

    *v.*

ALBERT GANIER, III,

      *Defendant-Appellee.*

No. 05-6350

>

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 04-00193—Karl S. Forester, District Judge.

Argued: September 20, 2006

Decided and Filed: November 15, 2006

Before: BATCHELDER, MOORE, and BALDOCK, Circuit Judges.[*]

---

**COUNSEL**

**ARGUED:** Eli Richardson, ASSISTANT UNITED STATES ATTORNEY, Nashville, Tennessee, for Appellant. Thomas H. Dundon, NEAL & HARWELL, Nashville, Tennessee, for Appellee. **ON BRIEF:** Eli Richardson, Paul M. O'Brien, ASSISTANT UNITED STATES ATTORNEYS, Nashville, Tennessee, for Appellant. Thomas H. Dundon, Aubrey B. Harwell, Jr., NEAL & HARWELL, Nashville, Tennessee, for Appellee.

---

**OPINION**

---

    KAREN NELSON MOORE, Circuit Judge. The United States appeals the district court's decision excluding certain evidence from the criminal trial of Defendant-Appellee Albert Ganier, III ("Ganier"). Ganier is charged with one count of endeavoring to obstruct justice in violation of 18 U.S.C. §§ 1503(a) and 2 and three counts of altering, destroying, or concealing documents in violation of 18 U.S.C. §§ 1519 and 2 for, among other acts, allegedly deleting certain computer files with intent to impede a federal investigation. On the morning on which Ganier's trial was to begin, Ganier filed a motion to exclude the proposed testimony of a government computer specialist, arguing that it was expert testimony for which the government had not provided a written summary as required by Federal Rule of Criminal Procedure 16(a)(1)(G). The district court granted the

---

[*] The Honorable Bobby R. Baldock, Circuit Judge of the United States Court of Appeals for the Tenth Circuit, sitting by designation.

motion, bringing the proceedings to a halt while the government filed this interlocutory appeal. We agree that the proposed testimony was expert testimony for which a written summary should have been provided, but because less severe remedies were not given adequate consideration, we **VACATE** the decision of the district court excluding the evidence and **REMAND** the case for further proceedings consistent with this opinion.

## I. BACKGROUND

According to the Superseding Indictment,[1] Ganier was Chief Executive Officer, Chairman of the Board, a shareholder, and a founder of Education Networks of America, Inc. ("ENA") and its predecessor companies. Joint Appendix ("J.A.") at 23. In July 2002, a television station broadcast news stories discussing alleged relationships between Ganier, certain high-ranking Tennessee officials, and John Stamps, a lobbyist for ENA.[2] The news stories included allegations of improprieties and favoritism in connection with contracts awarded to ENA by the State of Tennessee and solicitations of Tennessee and Texas officials for additional contracts.

In August 2002, a federal task force was formed and began a criminal investigation of the contracts and solicitations as well as various companies associated with John Stamps. Assisted by the federal task force, a federal grand jury began an investigation in September 2002, later transferred to a successive grand jury. Over the course of the next three months, the grand jury issued a number of subpoenas. In December 2002, after the grand jury issued subpoenas on various companies and state agencies, Ganier allegedly attempted to implement an email "retention" policy at ENA in which employees' emails would be set to delete after six months, deleted files relevant to the ongoing investigation from his laptop computer, deleted relevant files from his desktop computer, and deleted relevant files from an ENA employee's computer.

Ganier was ultimately indicted on one count of endeavoring to obstruct justice and three counts of altering, destroying, or concealing documents with intent to impede a federal investigation, and the case proceeded towards trial. As ordered by the district court, Ganier filed a summary of expected expert testimony on June 17, 2005, in which he indicated that he would offer evidence that the files in question were transferred to the recycle bin rather than deleted, and that approximately 225 duplicates and similar drafts of the allegedly deleted documents remained on the computers. J.A. at 159-61 (Summ. of Expert Test. at 4-6). He also indicated that he would offer evidence showing the following:

> The computers in question each possessed "search" functions that, if utilized, would have located all or substantially all of the duplicates and similar drafts or versions of the allegedly "deleted" documents, thereby permitting a user intent on concealment to delete all or substantially all copies of particular documents on those computers.

J.A. at 161.

According to the government, its forensic computer specialist, Special Agent Wallace Drueck of the IRS, decided to use forensic software to determine what searches were run on the three computers. J.A. at 386, 389-90 (Hr'g Tr. (AUSA Eli Richardson) at 8, 10-11). On August 1, 2005, the day before the date set for trial, Drueck determined from reports generated by the forensic software that searches had been run in December 2002 using search terms relevant to the grand jury

---

[1] Because this is an interlocutory appeal, the background facts are taken from the allegations of the Superseding Indictment.

[2] The Superseding Indictment does not name John Stamps, but describes an unnamed "Individual A." J.A. at 24. The government identified John Stamps as Individual A in its brief on appeal. Appellant Br. at 5.

investigation and the allegedly deleted files.  J.A. at 348-62 (Attachs. to Def.'s Mot. to Exclude); J.A. at 386-87 (Hr'g Tr. (AUSA Richardson) at 8-9).  The next morning, before the jury was impaneled, Ganier filed a motion to exclude the reports and related testimony, J.A. at 346 (Def.'s Mot. to Exclude), which the district court granted.  The government timely appealed, and the district court stayed the trial pending the appeal.

## II.  ANALYSIS

### A.  Issue Preservation

Ganier first argues that we should review the district court's decision only for plain error because the government failed to make an offer of proof in accordance with Federal Rule of Evidence 103(a).  Rule 103(a) states, in relevant part:

> (a) Effect of Erroneous Ruling.  Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
> . . .
>> (2) Offer of Proof.  In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.

FED. R. EVID. 103(a).  A formal offer of proof is not required, but the substance of the evidence, what it will show, and the grounds for admissibility must be made known to the court or be apparent from the context.  *See United States v. Crockett*, 435 F.3d 1305, 1311-12 (10th Cir. 2006); *United States v. Moore*, 425 F.3d 1061, 1068 (7th Cir. 2005); *United States v. Jimenez*, 256 F.3d 330, 343 (5th Cir. 2001), *cert. denied*, 534 U.S. 1140 (2002); *United States v. Quinn*, 123 F.3d 1415, 1420 (11th Cir. 1997), *cert. denied*, 523 U.S. 1012 (1998); *cf. Waltzer v. Transidyne Gen. Corp.*, 697 F.2d 130, 134 (6th Cir. 1983) ("Since the trial court was aware of, and the transcript discloses, the general nature of the evidence which was excluded, this issue may be considered on appeal.") (citation omitted).

It is undisputed that the government did not make a formal offer of proof in this case.  The government would have been well advised to make a formal offer of proof, as the district court was left to discern the substance of Drueck's testimony from Ganier's written motion and the parties' arguments the next morning.  Rule 103(a) does not require a formal offer of proof, however, and despite the shortcomings in the government's presentation, we conclude that it was adequate to warrant normal appellate review.

During the hearing on Ganier's motion to exclude, the government informed the court that Drueck would testify as to "what he found on the computers."  J.A. at 387 (Hr'g Tr. (AUSA Richardson) at 9).  The government explained that Drueck had run forensic software on the three computers to generate reports of a series of search terms, including examples of particular names and terms relevant to the case.  The district court had before it copies of the reports generated by the forensic software.  Defense counsel gave further details, stating that Drueck had run software revealing what searches had been run at particular dates and times.  J.A. at 384 (Hr'g Tr. (Thomas Dundon) at 6).  As the district court's Opinion and Order excluding the evidence confirms, that court was adequately aware of the substance of the proposed evidence and what it would show.  *See* J.A. at 368-71, 373 (Dist. Ct. Op. & Order at 1-4, 6) (describing the reports and proposed testimony).

Furthermore, because Ganier's motion to exclude was based on an alleged violation of Federal Rule of Criminal Procedure 16(a)(1)(G), Ganier did not argue that the proposed testimony was not admissible under the Federal Rules of Evidence.  Thus, the government adequately made the grounds for admissibility known to the court simply by arguing that it should not be excluded

for failure to comply with Federal Rule of Criminal Procedure 16(a)(1)(G). Accordingly, the government satisfied the minimum requirements of Federal Rule of Evidence 103(a), and we do not apply the plain-error doctrine in reviewing the district court's order.

## B. Exclusion of Evidence

### 1. Standard of Review

"We review the district court's admission or exclusion of evidence for an abuse of discretion." *United States v. Perry*, 438 F.3d 642, 647 (6th Cir.), *cert. denied*, 126 S. Ct. 2045 (2006). At the same time, "[i]n reviewing a trial court's evidentiary determinations, this court reviews *de novo* the court's conclusions of law and reviews for clear error the court's factual determinations that underpin its legal conclusions." *United States v. Baker*, 458 F.3d 513, 516 (6th Cir. 2006) (internal quotation marks omitted). These standards "are not in fact inconsistent, because 'it is an abuse of discretion to make errors of law or clear errors of factual determination.'" *Id.* at 517 (quoting *United States v. McDaniel*, 398 F.3d 540, 544 (6th Cir. 2005)).

### 2. Violation of Federal Rule of Criminal Procedure 16(a)(1)(G)

We must first determine whether the district court erred by concluding that Drueck's proposed testimony fell within the scope of Federal Rule of Criminal Procedure 16(a)(1)(G).[3] Rule 16(a)(1)(G) requires, in part, that "[a]t the defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial." FED. R. CRIM. P. 16(a)(1)(G). Testimony falls under Federal Rule of Evidence 702 if it is based on "scientific, technical, or other specialized knowledge." FED. R. EVID. 702.

The government argues that Drueck's proposed testimony is not based on scientific, technical, or other specialized knowledge, but is simply lay testimony available by "running commercially-available software, obtaining results, and reciting them." Appellant Br. at 38. The government contends that this testimony is of the same type as "facts . . . that could be observed by any person reasonably proficient in the use of commonly used computer software, such as Microsoft Word and Microsoft Outlook (such as the existence and location of multiple copies of documents that are identical or virtually identical to the allegedly 'deleted' documents)," which Ganier previously indicated he did not consider to be expert testimony. J.A. at 156 (Def.'s Summ. of Expert Test. 1).

The reports generated by the forensic software display a heading, a string of words and symbols, a date and time, and a list of words. *See* J.A. at 348-62 (Attachs. to Def.'s Mot. to Exclude).[4] The government asserts that these reports reveal three different types of searches

---

[3] In its ruling from the bench, the district court excluded the proposed testimony pursuant to Federal Rule of Criminal Procedure 16(a)(1)(F). J.A. at 395-96 (Hr'g Tr. at 17-18). In its Opinion & Order, however, the district court relied on Rule 16(a)(1)(G). J.A. at 368-76. The later written opinion supersedes the earlier oral ruling. *See O'Neill v. AGWI Lines*, 74 F.3d 93, 95 (5th Cir. 1996); *Snow Machines, Inc. v. Hedco, Inc.*, 838 F.2d 718, 727 (3d Cir. 1988); *Harbor Tug & Barge, Inc. v. Belcher Towing Co.*, 733 F.2d 823, 827 & n.3 (11th Cir. 1984); *White v. Washington Pub. Power Supply Sys.*, 692 F.2d 1286, 1289 n.1 (9th Cir. 1982). Moreover, Ganier did not brief the issue relating to Rule 16(a)(1)(F) on appeal, and he does not appear to argue that we should decide this appeal on that ground.

[4] For example, a portion of one report reads as follows:
Registry - Al Ganier Desktop
      Software\Microsoft\Internet Explorer\Explorer Bars\{C4EE31F3-4768-11D2-BE5C-00A0C9A83DA1}\FilesNamedMRU
Last Written Time  12/09/02  08:34:57

performed with particular search terms at particular times, but such an interpretation would require Drueck to apply knowledge and familiarity with computers and the particular forensic software well beyond that of the average layperson. This constitutes "scientific, technical, or other specialized knowledge" within the scope of Rule 702.

Because the categorization of computer-related testimony is a relatively new question, comparisons with other areas of expert testimony are instructive. Software programs such as Microsoft Word and Outlook may be as commonly used as home medical thermometers, but the forensic tests Drueck ran are more akin to specialized medical tests run by physicians. *Cf. Lyons v. Stovall*, 188 F.3d 327, 330 (6th Cir. 1999) (describing as "expert witnesses" two doctors who performed blood paternity tests and testified as to the results), *cert. denied*, 530 U.S. 1203 (2000). The average layperson today may be able to interpret the outputs of popular software programs as easily as he or she interprets everyday vernacular, but the interpretation Drueck needed to apply to make sense of the software reports is more similar to the specialized knowledge police officers use to interpret slang and code words used by drug dealers. *Cf. United States v. Garcia*, No. 95-1224, 1995 WL 712757, at *4-*5 (6th Cir. Dec. 4, 1995) (unpublished) (affirming a decision to allow a police officer to give expert testimony as to the meaning of certain code words); *United States v. Peoples*, 250 F.3d 630, 640-41 (8th Cir. 2001) (concluding that a police officer should not have been allowed to testify as to the meaning of code words on recorded conversations because she had not been qualified as an expert).

We have on occasion allowed witnesses to apply specialized knowledge while giving lay testimony. *See, e.g.*, *United States v. Wells*, 211 F.3d 988, 997-98 (6th Cir. 2000) (affirming a decision allowing doctors to testify as fact witnesses that a person was cancer-free based on first-hand observations) (citing *Richardson v. Consol. Rail Corp.*, 17 F.3d 213, 218 (7th Cir. 1994)); *United States v. Smith*, No. 96-1885, 1998 WL 385471, at *4 (6th Cir. June 29, 1998) (unpublished) (affirming a decision to allow police officers to give lay testimony explaining the code words they used while negotiating a drug purchase). However, the 2000 amendment to Federal Rule of Evidence 701 clarified that lay opinions or inferences cannot be based on "scientific, technical, or other specialized knowledge within the scope of Rule 702." FED. R. EVID. 701. Even before the amendment, witnesses who performed after-the-fact investigations were generally not allowed to apply specialized knowledge in giving lay testimony. *See Richardson*, 17 F.3d at 218 (stating that a doctor is not an expert when his or her testimony is based on observations made during the course of treatment, is not acquired for purposes of litigation, and is based on personal knowledge); *Peoples*, 250 F.3d at 641 ("When a law enforcement officer is not qualified as an expert by the court, her testimony is admissible as lay opinion only when the law enforcement officer is a participant in the conversation, has personal knowledge of the facts being related in the conversation, or observed the conversations as they occurred."). Thus, the district court did not err by concluding that Drueck's proposed testimony could be offered only pursuant to Rule 702. Accordingly, the government violated Federal Rule of Criminal Procedure 16(a)(1)(G) by not providing a written summary of the testimony to Ganier.

---

| Name | Type | Data |
|------|------|------|
| 000 | REG_SZ | al... |
| 001 | REG_SZ | sony... |
| 002 | REG_SZ | RFP... |
| 003 | REG_SZ | sundquist... |
| 004 | REG_SZ | ARC... |
| 005 | REG_SZ | roadmap to revenue... |
| 006 | REG_SZ | road... |
| 007 | REG_SZ | roadmap... |

J.A. at 359.

### 3. Remedy

We still must determine whether the district court imposed an appropriate remedy. Federal Rule of Criminal Procedure 16(d)(2) states:

> If a party fails to comply with [Rule 16], the court may:
> (A)   order that party to permit the discovery or inspection; specify its time, place, and manner; and prescribe other just terms and conditions;
> (B)   grant a continuance;
> (C)   prohibit that party from introducing the undisclosed evidence; or
> (D)   enter any other order that is just under the circumstances.

FED. R. CRIM. P. 16(d)(2). In deciding whether suppression of evidence is an appropriate remedy, a district court should consider:

> (1) the reasons for the government's delay in producing the materials, including whether it acted intentionally or in bad faith; (2) the degree of prejudice, if any, to the defendant; and (3) whether the prejudice to the defendant can be cured with a less severe course of action, such as granting a continuance or a recess.

*United States v. Maples*, 60 F.3d 244, 247 (6th Cir. 1995). "District courts should embrace the 'least severe sanction necessary' doctrine, and hold that suppression of relevant evidence as a remedial device should be limited to circumstances in which it is necessary to serve remedial objectives." *Id.* at 247-48. These principles apply with equal force to both the government and the defendant.

The record in this case does not reflect whether the district court considered the reasons for the government's delay, the degree of prejudice to Ganier, or whether a less severe sanction was appropriate. At least one court has concluded that excluding expert testimony without making a record of these considerations is an abuse of discretion. *United States v. Sarracino*, 340 F.3d 1148, 1170-71 (10th Cir. 2003), *cert. denied*, 540 U.S. 1131, *and* 540 U.S. 1133 (2004). We agree under the circumstances involved here.

Furthermore, the record does not reflect bad-faith conduct by the government. The government disclosed the reports that Drueck generated with forensic software almost immediately after it received them. J.A. at 368 (Dist. Ct. Op. & Order at 1); J.A. at 386 (Hr'g Tr. (AUSA Richardson) at 8); *cf. United States v. Bartle*, 835 F.2d 646, 649-50 (6th Cir. 1987) (affirming the district court's decision to admit evidence discovered the previous day though not disclosed in accordance with Rule 16), *cert. denied*, 485 U.S. 969 (1988). Ganier argues that the government's failure to give a written summary of proposed testimony was an intentional violation of Rule 16(a)(1)(G) once it became clear that Drueck would offer expert testimony. However, there is no evidence that the government argued in bad faith that Drueck would be giving only fact testimony, and this appeal immediately followed the district court's decision to the contrary. The government may have been negligent in waiting until the day before trial to investigate search terms, but negligence does not, by itself, warrant suppression.

Finally, the record does not reflect any prejudice to Ganier that could not have been cured with a less severe sanction, such as a continuance or a limitation in the scope of Drueck's testimony. Ganier raised the issue of computer searches himself and had an expert prepared to testify about searches and search functions. J.A. at 161 (Def.'s Summ. of Expert Test. at 6). Ganier was thus well aware that the issue could be raised at trial, reducing any potential prejudice. *See United States v. Melucci*, 888 F.2d 200, 203 (1st Cir. 1989). The government gave Ganier a copy of the underlying computer evidence in the fall of 2004 and a copy of the forensic software reports immediately after they were produced. J.A. at 385-86 (Hr'g Tr. (AUSA Richardson) at 7-8). Access

to the evidence and reports further reduces any potential prejudice. *See United States v. Charley*, 189 F.3d 1251, 1262 (10th Cir. 1999), *cert. denied*, 528 U.S. 1098 (2000). In the face of these factors, Ganier has not identified any particular prejudice that he would suffer if the district court admitted Drueck's testimony.

Ganier might be able to identify incurable prejudice or bad-faith conduct once the government provides a written summary of Drueck's testimony or additional facts otherwise come to light. On the record as it stands, however, the district court abused its discretion by excluding the proposed testimony.

## C. Other Evidentiary Objections

Finally, Ganier contends that the proposed testimony is inadmissible hearsay under Federal Rules of Evidence 801 and 802, that the results produced by the forensic software would not be properly authenticated by Drueck's proposed testimony and are thus inadmissible under Federal Rule of Evidence 901, and that the proposed testimony is irrelevant and thus inadmissible under Federal Rule of Evidence 401. We decline to address these arguments, as they were not presented to or addressed by the district court. *See Barner v. Pilkington N. Am., Inc.*, 399 F.3d 745, 749 (6th Cir. 2005). Ganier is free to raise them in the district court on remand.

## III.  CONCLUSION

Because remedies less severe than exclusion were not given adequate consideration, we **VACATE** the decision of the district court and **REMAND** the case for further proceedings consistent with this opinion.